IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES SAXTON HARLAND III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-719 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Judge Cathy Bissoon |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Maureen P. Kelly |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

I. **INTRODUCTION**

Plaintiff James Saxton Harland, III ("Harland"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 7 & 9). For the reasons that follow, it is respectfully recommended that Harland's motion for summary judgment (ECF No. 7) be denied, that the Commissioner's motion for summary judgment (ECF No. 9) be granted, and that the Commissioner's decision be affirmed.

II. **PROCEDURAL HISTORY**

Harland protectively applied for DIB and SSI benefits on April 16, 2009, alleging that he had become "disabled" on February 17, 2009. (R. at 116, 123, 145). Pennsylvania's Bureau of

1

Disability Determination denied the applications on July 16, 2009. (R. at 61, 67, 73, 79). Harland responded on August 28, 2009, by filing a timely request for an administrative hearing. (R. at 87-88). On February 26, 2010, a hearing was held before Administrative Law Judge ("ALJ") Augustus C. Martin. (R. at 8). Harland, who was assisted by a non-attorney representative,[1] appeared and testified in Pittsburgh, Pennsylvania. (R. at 13-34, 47). Mary Beth Kopar ("Kopar"), an impartial vocational expert, also testified at the hearing. (R. at 35-39). The ALJ presided over the hearing from Baltimore, Maryland, by means of an electronic video-conferencing apparatus. (R. at 47). In a decision dated March 17, 2010, the ALJ determined that Harland was not "disabled" within the meaning of the Act. (R. at 44-55).

On May 11, 2010, Harland sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 113). The Appeals Council denied the request for review on March 30, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. (R. at 1). Harland commenced this action on May 31, 2012, seeking judicial review of the Commissioner's decision. (ECF No. 1). Harland and the Commissioner filed motions for summary judgment on September 24, 2012, and October 24, 2012, respectively. (ECF Nos. 7 & 9). These motions are the subject of this Report and Recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d

---

[1] The Act permits non-attorneys to represent claimants in Social Security disability proceedings conducted before the Commissioner. 42 U.S.C. § 406(a)(1).

2

43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

4

to judicial review under the "substantial evidence" standard. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Chenery Corp., 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. THE DECISION OF THE ALJ

In the case at issue, the ALJ determined that Harland had not engaged in substantial gainful activity subsequent to his alleged onset date. (R. at 49). Harland was found to be suffering from depression, obstructive sleep apnea and obesity. (R. at 49-50). His depression was deemed to be "severe" under the Commissioner's regulations. (R. at 49); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Harland's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 50-51).

5

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Harland's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine, unskilled tasks on a sustained basis, but can have no more than occasional contact with co-workers, supervisors and the general public and requires a low stress work environment, meaning no production-paced work.

(R. at 51). Harland had "past relevant work"[3] experience as a security guard, customer service clerk and credit card clerk. (R. at 36, 53). Kopar classified those positions as "semi-skilled"[4] jobs. (R. at 36). Since Harland was deemed to be capable of performing only "unskilled"[5] work, it was determined that he could not return to his past relevant work. (R. at 53).

Harland was born on August 22, 1976, making him thirty-two years old on his alleged onset date and thirty-three years old on the date of the ALJ's decision. (R. at 14, 53). He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

404.1563(c), 416.963(c). He had more than a high school education[6] and an ability to communicate in English. (R. at 15, 53, 149, 158); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Harland could work as a laundry worker or cleaner. (R. at 54). Kopar's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[7]

## V. DISCUSSION

In support of his request for review, Harland submitted documentary evidence to the Appeals Council that had not been presented to the ALJ. (R. at 4-6, 491-583). When the Appeals Council denied Harland's request for review, the ALJ's decision became the "final decision" of the Commissioner in this case. Sims v. Apfel, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). This Court has jurisdiction to review only the Commissioner's "final decision." Califano v. Sanders, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); Bacon v. Sullivan, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). Nothing in the Act authorizes judicial review of the Appeals Council's decision denying Harland's request for review. Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001). Since Harland does not move for a remand pursuant to the sixth sentence[8] of § 405(g), consideration may be given only to the

---

[6] The record indicates that Harland completed his third year of college in 1997. (R. at 158). Harland testified that he had withdrawn from college because of attendance problems associated with his depression. (R. at 15).

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

[8] The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The standards governing the propriety of a sentence-six remand were discussed by the United States Court of Appeals for the Third Circuit in Szubak v. Secretary of Health & Human Services, 745 F.2d 831, 833-834 (3d Cir. 1984).

evidence that was before the ALJ at the time of his decision. Chandler v. Commissioner of Social Security, 667 F.3d 356, 360 (3d Cir. 2011); Matthews, 239 F.3d at 592-595.

Harland worked as a customer service clerk during the six years immediately preceding his alleged onset date. (R. at 151). In that capacity, he provided membership-related services to the members of a tennis association. (R. at 151). On February 16, 2009, Harland informed Kathy A. Leeper ("Leeper"), his mental health counselor, that he had consumed two bottles of cough syrup earlier that day. (R. at 281). He had apparently been drinking cough syrup containing Dextromethorphan in order to "calm down and stay awake." (R. at 244). Leeper suggested that Harland seek treatment through a partial hospitalization program in order to avoid the need for inpatient treatment. (R. at 282). After speaking with Leeper, Harland telephoned his employer and advised that he would be exercising his right to medical leave under the Family and Medical Leave Act of 1993 ("FMLA") [29 U.S.C. § 2601 *et seq.*].[9] (R. at 282).

Harland was admitted to the partial hospitalization program at Turtle Creek Mental Health/Mental Rehabilitation, Inc. ("Turtle Creek"), on February 18, 2009. (R. at 244). At the time of his admission, Harland acknowledged that he had been consuming full bottles of cough syrup. (R. at 244). It was noted that he needed "extensive therapy and frequent monitoring." (R. at 244). On March 11, 2009, Dr. Manohar Shetty observed that Harland was doing better from a psychiatric standpoint. (R. at 272). Harland was discharged from the partial hospitalization program on March 13, 2009. (R. at 368). After a follow-up appointment on April 7, 2009, Dr. Shetty reported that Harland's "[m]ental status examination" had been "unremarkable." (R. at 276). Dr. Shetty described Harland's condition as "stable." (R. at 276).

---

[9] The FMLA provides an eligible employee with a statutory right to twelve weeks of unpaid leave during any twelve-month period necessitated by "a serious health condition that makes the employee unable to perform the functions of" his or her position." 29 U.S.C. § 2612(a)(1)(D).

Studies and evaluations conducted during the spring of 2009 revealed that Harland was suffering from obstructive sleep apnea. (R. at 406-412). Dr. Gail Kubrin, a treating psychiatrist, reported on June 11, 2009, that Harland had been unable to work since the date of his admission to Turtle Creek's partial hospitalization program. (R. at 413). She stated that Harland was "not yet stable psychiatrically" and could concentrate on a task for only fifteen to thirty minutes at a time. (R. at 413). Dr. Kubrin indicated that Harland's condition would need to be reassessed on September 30, 2009, to determine whether he could return to work. (R. at 414). Harland was assigned a Global Assessment of Functioning ("GAF") rating of thirty-eight.[10] (R. at 414).

Dr. Manella Link, a non-examining psychological consultant, opined on July 16, 2009, that Harland was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. at 417). In the narrative portion of his consultative report, Dr. Link explained:

> The claimant's basic memory processes are intact. Stress exacerbates his symptoms. He has a history of impulsive behavior. He would be able to make simple decisions. He can sustain an ordinary routine without special supervision. Additionally, he evidences some limitation in dealing with work stresses and public contact.

Dr. Link viewed Harland's subjective complaints to be only "partially credible." (R. at 417).

Deborah Parker ("Parker"), a non-examining medical consultant, reported on July 16, 2009, that no physical limitations could be attributed to Harland's obstructive sleep apnea. (R. at 433-439). The ALJ relied on Parker's assessment in determining that Harland had no exertional

---

[10] "The Global Assessment of Functioning ('GAF') scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's [level of] psychological, social and occupational function[ing]." Taliaferro v. Astrue, 788 F.Supp.2d 412, 414, n. 2 (W.D.Pa. 2011). An individual with a GAF score falling between thirty-one and forty exhibits *either* "[s]ome impairment in reality testing or communication" *or* "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, ("DSM-IV-TR")(4th ed. 2000), at 34. Depending on his or her precise circumstances, an individual with a GAF rating in this range *may* be "unable to work." *Id.*

9

limitations. (R. at 53). Dr. Link's opinion was accorded "great weight" because the ALJ deemed it to be "supported by the evidence of record." (R. at 53). Relying on Dr. Shetty's observations concerning the improvement in Harland's condition, the ALJ afforded "little weight" to Dr. Kubrin's opinion. (R. at 53).

At the second and third steps of the sequential evaluation process, the Commissioner considers a claimant's mental impairments in relation to the "four broad functional areas" of "[a]ctivities of daily living," "social functioning," "concentration, persistence, or pace," and "episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). In his consultative report, Dr. Link opined that Harland's mental impairments resulted in no restriction in his activities of daily living, "moderate" limitations in his maintenance of social functioning, and "moderate" limitations in his maintenance of concentration, persistence, or pace. (R. at 429). The ALJ adopted these findings in his decision. (R. at 50). Dr. Link indicated that the record was silent as to whether Harland had experienced episodes of decompensation. (R. at 429). In his decision, the ALJ concluded that Harland had "experienced one to two episodes of decompensation, each of extended duration." (R. at 50). Although these findings rendered Harland's impairment "severe" under the Commissioner's regulations, they did not render it *per se* disabling under Listing 12.04. (R. at 49-51); 20 C.F.R. §§ 404.1520a(c)(4), (d)(2), 416.920a(c)(4), (d)(2); 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04. Since the case was not resolved at the third step, the ALJ was required to assess Harland's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

An assessment of a claimant's residual functional capacity must account for any deficiencies in his or her ability to maintain the "concentration, persistence, or pace" typically expected of full-time employees. Ramirez v. Barnhart, 372 F.3d 546, 554-555 (3d Cir. 2004).

10

Harland argues that the limitations restricting him to the performance of "simple, routine, unskilled tasks" in "a low stress work environment" were insufficient to accommodate his "moderate" difficulty in maintaining the "concentration, persistence, or pace" expected by most employers. (R. at 51; ECF No. 8 at 9-11). In making that assertion, however, Harland overlooks the fact that the ALJ specifically defined the term "low stress work environment" to mean an environment requiring the performance of "no production-paced work." (R. at 51). The definition was twice conveyed to Kopar, the impartial vocational expert. (R. at 37). It was included in the original series of questions describing an individual with Harland's residual functional capacity. (R. at 37). The ALJ reiterated the definition at the request of Harland's representative. (R. at 37). Since the ALJ's residual functional capacity assessment and corresponding hypothetical questions accounted for Harland's inability to perform "production-paced work," Kopar's testimony constituted "substantial evidence" of the existence of jobs in the national economy consistent with Harland's abilities and limitations. Johnson v. Commissioner of Social Security, 529 F.3d 198, 205-206 (3d Cir. 2008).

Harland maintains that the ALJ erred in rejecting Dr. Kubrin's opinion of disability. (ECF No. 8 at 12-15). He correctly points out that Dr. Shetty never rendered an opinion as to whether he could return to work. (*Id.* at 14). Harland goes on to say that the assessment provided by Dr. Link, a non-examining consultant, was not sufficiently probative of his ability to work to outweigh Dr. Kubrin's opinion. (*Id.* at 15).

When all other factors are equal, an opinion supplied by a treating source is entitled to more weight than an opinion provided by a non-examining consultant. Brownawell v. Commissioner of Social Security, 554 F.3d 352, 357 (3d Cir. 2008). Nonetheless, assessments prepared by non-examining consultants "merit significant consideration." Chandler, 667 F.3d at

11

361. The opinion of a treating physician does not bind the Commissioner on the issue of a claimant's residual functional capacity. Brown v. Astrue, 649 F.3d 193, 197, n. 1 (3d Cir. 2011). There are circumstances in which an opinion supplied by a non-examining consultant can outweigh an opinion provided by a treating source. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Every medical opinion, regardless of its source, must be accorded some consideration. Williams v. Sullivan, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992).

A medical report must be considered in relation to the evidentiary record as a whole. Miller v. Commissioner of Social Security, 172 F.3d 303, 304 (3d Cir. 1999). When viewed in context, the statement completed by Dr. Kubrin on June 11, 2009, was facially insufficient to establish Harland's entitlement to benefits under the Act. Harland testified that he had received short-term disability payments from his employer during the second quarter of 2009. (R. at 16). The form completed by Dr. Kubrin appears to have been supplied by Harland's disability insurance carrier. (R. at 413-414). In the portion of the form describing a recipient's "barriers to returning to work," Dr. Kubrin indicated that an "[a]nticipation of relapse" was her primary reason for finding Harland to be "[u]nable to work" through September 30, 2009. (R. at 414). The other options available to a treating clinician, however, clearly related to factors associated with an individual's *particular* job. The possible "barriers" listed on the form included an increase in an individual's work demand, conflicts with his or her supervisor, dissatisfaction with his or her job, or a "[r]ecent unfavorable work evaluation." (R. at 414). The form created by the disability insurance carrier was plainly designed to secure an opinion as to whether "barriers" prevented an individual from returning to his or her *specific* position. Viewed in this light, Dr. Kubrin's assessment could be understood to mean that a "relapse" would have been expected if Harland had returned to *his* prior job before September 30, 2009. (R. at 414). That opinion was

12

not inconsistent with the ALJ's decision. The ALJ did not conclude that Harland could return to his past relevant work. (R. at 53). Instead, the ALJ determined that Harland could perform the duties of *other jobs* existing in the national economy. (R. at 54).

Even if Dr. Kubrin's statement could be read broadly enough to mean that Harland could not perform the duties of *any* full-time job, the ALJ was not required to credit it under these circumstances. Dr. Kubrin did not describe Harland's limitations on a function-by-function basis. Instead, she merely reported that Harland was "not yet stable psychiatrically" and, therefore, unable to return to work. (R. at 413-414). Dr. Kubrin's observation amounted to nothing more than a legal conclusion. The ultimate question of a claimant's "disability" is reserved for the Commissioner's determination. Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Under the Commissioner's regulations, unsupported opinions of "disability" do not qualify as "medical opinions" entitled to consideration. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Luce v. Astrue, 523 F.Supp.2d 922, 936 (S.D.Iowa 2007); Earl-Buck v. Barnhart, 414 F.Supp.2d 288, 293 (W.D.N.Y. 2006); Wheat v. Barnhart, 318 F.Supp.2d 358, 364, n. 11 (M.D.La. 2004); 20 C.F.R. §§ 404.1527(d), 416.927(d). A true "medical opinion" particularly describes what a claimant can or cannot do in light of his or her medical condition. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The availability (or unavailability) of jobs consistent with an individual's abilities and limitations raises a *vocational* question rather than a *medical* question. 20 C.F.R. §§ 404.1566(e), 416.966(e). For this reason, "little deference" is owed to a treating physician's conclusory statement declaring his or her patient to be "disabled." Willis v. Baxter International, Inc., 175 F.Supp.2d 819, 832 (W.D.N.C. 2001). The ALJ acted within his discretion in choosing to credit

Dr. Link's more detailed assessment over Dr. Kubrin's conclusory assertion. Brown, 649 F.3d at 196-197; Jones, 954 F.2d at 129.

A claimant attempting to secure benefits under the Act must demonstrate that both his or her medically determinable impairment (or combination of impairments) and his or her inability to work have lasted (or are expected to last) for the statutory period of twelve months. Barnhart v. Walton, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Harland's alleged onset date was February 17, 2009. (R. at 116, 123). To the extent that Dr. Kubrin's statement was worthy of credence, it was sufficient to establish Harland's inability to work only through September 30, 2009. (R. at 414). In that respect, it was facially inadequate to support a finding that Harland was "disabled" within the meaning of the Act. Walton, 535 U.S. at 214-222.

Harland advises that he has already been awarded benefits under the Act for the period of time postdating the ALJ's decision. (ECF No. 8 at 14, n. 61). The present case, however, must be considered only in relation to the evidence that was before the ALJ. Matthews, 239 F.3d at 592-595. When Harland applied for benefits, he stated that he had stopped working in order to undergo "intensive treatment and hospitalization for psychiatric problems." (R. at 150). It is undisputed that Harland was working immediately before his partial hospitalization, and that his entry into the program at Turtle Creek was *itself* the reason why he did not continue to work. Given that Harland had stopped working as a customer service clerk precisely because he needed to enter Turtle Creek's partial hospitalization program, it was reasonable for the ALJ to infer that the "improvement" precipitating Harland's discharge had rendered him able to perform the duties of *less demanding* jobs existing in the national economy. (R. at 53).

Harland's treating healthcare providers assigned him a GAF score of thirty-eight during the course of his partial hospitalization. (R. at 271, 274). On June 11, 2009, Dr. Kubrin again

14

gave Harland a GAF rating of thirty-eight. (R. at 414). Although the ALJ rejected the GAF score provided by Dr. Kubrin, he did not make reference to the GAF scores recorded while Harland was undergoing treatment at Turtle Creek. (R. at 53). Harland contends that the ALJ's failure to address those scores necessitates a remand for further proceedings. (ECF No. 8 at 15-17). That contention is misplaced. While GAF scores may be "useful in tracking a patient's progress in global terms," they do not necessarily correlate with work-related abilities and limitations. Chanbunmy v. Astrue, 560 F.Supp.2d F.Supp.2d 371, 383 (E.D.Pa. 2008). Furthermore, the ALJ made specific reference to the GAF score contained in Dr. Kubrin's statement. (R. at 53). Because the primary factual issue was whether Harland had remained incapable of working in the aftermath of his discharge, the GAF score provided by Dr. Kubrin was more relevant than those recorded by Turtle Creek personnel. Under these circumstances, the omission of the earlier GAF scores from the ALJ's analysis does not provide a basis for setting his decision aside.[11] Davis v. Astrue, 830 F.Supp.2d 32, 47-48 (W.D.Pa. 2011).

An administrative law judge "must give serious consideration to a claimant's subjective complaints" whenever the record contains objective evidence of an impairment that could reasonably be expected to cause the symptoms alleged or described by the claimant. Mason v. Shalala, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). The record indicates that the ALJ seriously considered Harland's testimony in determining his residual functional capacity. At the hearing, Harland testified that he had been irritable with customers while working as a customer service clerk. (R. at 21). He described instances in which he had felt "anxious" while grocery shopping "around a lot of people." (R. at 30). Harland responded in the affirmative when asked whether he had experienced difficulties in dealing with supervisors and other authority figures. (R. at 31-

---

[11] The ALJ was not required to discuss every piece of evidence found in the record. Johnson v. Commissioner of Social Security, 529 F.3d 198, 203-205 (3d Cir. 2008).

32).  The ALJ addressed those concerns by restricting Harland to work involving only "occasional" contact with co-workers, supervisors, and members of the general public.  (R. at 51).  It is worth noting that, in response to a question posed by Harland's representative, Kopar clarified that she had construed the ALJ's iteration of the "contact" limitations to preclude jobs requiring an individual to work in close proximity to others.  (R. at 38-39).

Harland testified that he had experienced difficulties in adapting to changes in his work routine.  (R. at 32).  He argues that the ALJ erred in failing to accommodate those difficulties.  (ECF No. 8 at 10-11).  The problems described by Harland at the hearing, however, pertained to the duties of his prior job.  Harland stated that he had been reprimanded for failing to incorporate changes to the script detailing the proper statements to be made to his employer's customers.  (R. at 32).  The ALJ accounted for that testimony by precluding jobs requiring Harland to frequently interact with others.  (R. at 51).  In this respect, the ALJ's residual functional capacity assessment mooted Harland's inability to adjust to new scripts.  To the extent that Harland attempts to impugn other aspects of the ALJ's credibility analysis, the ALJ was not required to credit Harland's testimony in every respect.  Chandler, 667 F.3d at 363.

Kopar responded in the negative when asked whether jobs existed in the national economy for an individual who was "unable to maintain regular attendance and be punctual within customary and usual strict tolerances."  (R. at 38).  On the basis of the existing record, however, the ALJ was not required to find that Harland was incapable of meeting the demands of a typical employer.  Rutherford v. Barnhart, 399 F.3d 546, 553-554 (3d Cir. 2005).  Therefore, the portion of Kopar's testimony discussing a hypothetical individual with limitations extending beyond those found by the ALJ did not preclude a determination that Harland was capable of

16

working during the relevant period of time. Craigie v. Bowen, 835 F.2d 56, 57-58 (3d Cir. 1987).

## VI. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Harland's motion for summary judgment (ECF No. 7) be denied, and that the Commissioner's motion for summary judgment (ECF No. 9) be granted. It is further recommended that the Commissioner's "final decision" denying Harland's applications for DIB and SSI benefits be affirmed. In accordance with 28 U.S.C. § 636(b)(1), the parties have fourteen days to file written objections to this Report and Recommendation. A party's failure to file written objections will seriously impair his ability to challenge this Court's legal conclusions on appeal. Brightwell v. Lehman, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

BY THE COURT:

*s/ Maureen P. Kelly*
Maureen P. Kelly
United States Magistrate Judge

Dated: 14 January, 2013

cc: All counsel of record